NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 14-649 (ES) |
| ANTONIO PIMENTA, | : Opinion |
| Defendant. | : |

SALAS, DISTRICT JUDGE

## I.  Introduction

The Government charges defendant Antonio Pimenta with the following five counts: one count of conspiracy to commit bank fraud under 18 U.S.C. § 1349 (Count 1); three counts of bank fraud under 18 U.S.C. § 1344 (Counts 2 through 4); and one count of bank bribery under 18 U.S.C. § 215(a)(1) (Count 5). This Opinion resolves Pimenta's motion to dismiss the Government's bank bribery Count brought under 18 U.S.C. § 215(a)(1).  (D.E. No. 95).

Section 215(a)(1) punishes whoever "corruptly gives, offers, or promises anything of value to any person, with intent to influence or reward an officer, director, employee, agent, or attorney of a financial institution in connection with any business or transaction of such institution." The Government alleges that Pimenta violated this statute based on a transaction involving an agent of JPMorgan Chase Bank. But, under Federal Rule of Criminal Procedure 12(b)(3)(B), Pimenta argues that—given the factual allegations—the Indictment fails to state a Section 215(a)(1) offense. In particular, Pimenta argues the allegations fail to make out that the other individual involved in the transaction is an "agent" under Section 215(a)(1).

- 1 -

Having considered the parties' submissions and heard oral argument on October 20, 2015, the Court GRANTS Pimenta's motion to dismiss Count Five of the Indictment.

## II. Relevant Background[1]

Pimenta owned two construction companies based in Irvington, New Jersey. (D.E. No. 72 ("Indictment") ¶ 1(a)). In 2005 & 2007, one of his construction companies, Kelmar Construction, Inc., bought three real estate properties in Irvington. (*Id.* ¶ 15(a), (i) & (t)). These properties were the subject of a scheme to defraud JPMorgan Chase Bank. In this scheme, the co-conspirators arranged for certain nominal purchasers—referred to as "straw buyers"—to purchase the three properties using mortgage loans fraudulently obtained from JPMorgan Chase. (*See, e.g.*, *id.* ¶¶ 1(h), 2). Pimenta and his co-conspirators profited from the sale and financing of the three properties, including one that exploded before the closing took place. (*Id.* ¶¶ 4, 15(o) & (q)).

In particular, it was part of the conspiracy that:

> after approving the mortgage loans, based upon paperwork the Co-Conspirators submitted, the mortgage lenders and financial institutions, including JPMorgan Chase, caused electronic wire transfers of funds to be sent to S.B.'s attorney trust account (the "S.B. ATA"). The S.B. ATA was controlled by co-conspirator Linda Cohen, the settlement agent, who closed the mortgage loans for the Subject Properties, and so acted as the agent of JPMorgan Chase in the transactions. . . .
>
> It was further part of the conspiracy that in or around October 2007, defendant PIMENTA and others paid an approximately $50,000 cash bribe to co-conspirator Cohen, who at the time was acting as the agent of JPMorgan Chase, to complete the fraudulent closing of one of the Subject Properties located in or around Irvington, New Jersey, because the home had exploded just before the closing was to take place.

---

[1] For purposes of resolving Pimenta's motion to dismiss, the Court accepts the factual allegations contained in the Indictment as true. *See United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011).

(*Id.* ¶¶ 10, 11; *see also id.* ¶ 15(o) ("The closing was consummated, in part, because defendant PIMENTA caused an approximately $50,000 bribe to be paid to co-conspirator Cohen to induce her to close a mortgage on a house that no longer existed.")).

Accordingly, the Government charges that Pimenta "corruptly gave, offered, and promised something of value, that is, approximately $50,000 to co-conspirator Linda Cohen, an agent of JPMorgan Chase, with the intent to influence and reward co-conspirator Cohen in connection with a business and transaction of JPMorgan Chase" in violation of 18 U.S.C. § 215(a)(1). (Indictment at Count 5, ¶ 2). Pimenta moves to dismiss this Count.

### III. Legal Standard

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." To comply with Rule 7(c)(1), an indictment must be sufficient on its face. *See United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). "An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Id.* (quotation marks omitted).[2] Moreover, an indictment does not require greater specificity than the statutory language of the offense charged if there is a sufficient factual framework to allow the defendant to prepare his or her defense. *See United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011).

---

[2] "To determine whether an indictment 'contains the elements of the offense intended to be charged,' a district court may look for more than a mere 'recitation in general terms of the essential elements of the offense.'" *Bergrin*, 650 F.3d at 264 (textual modifications omitted) (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)). And, "typically, a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013).

Under Federal Rule of Criminal Procedure 12(b)(3)(B), however, a defendant may move to dismiss for a "defect in the indictment," including for "failure to state an offense." A district court must find that "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002), *abrogated on other grounds by United States v. Wright*, 665 F.3d 560 (3d Cir. 2012); *see also United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) ("Although the Government is not required to set forth its entire case in the indictment, if the specific facts that are alleged fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation, the indictment fails to state an offense." (citation and internal quotation marks omitted)).

Thus, Rule 12(b)(3)(B) "allows a district court to review the sufficiency of the government's pleadings to . . . ensure that legally deficient charges do not go to a jury." *Huet*, 665 F.3d at 595 (textual modifications omitted) (quoting *Bergrin*, 650 F.3d at 268). To be sure, however, "a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." *Id.* at 595-96.

## IV. Discussion

### A. The Parties' Contentions

Pimenta argues that the Indictment only alleges that Cohen was a "paralegal for attorney S.B. [i.e., Stephen D. Brown, Esq., who has not been charged by the Government] and handled real estate closings for him." (D.E. No. 95-1 ("Pimenta Mov. Br.") at 2 (quoting Indictment ¶ 1(e))). Pimenta contends that—given the allegations of the Indictment—Cohen cannot be an "officer, director, employee, agent, or attorney of a financial institution" as a matter of law.

(D.E. No. 100 ("Pimenta Reply Br.") at 2). Pimenta states that the Government fails to allege that Cohen "was employed by the bank, was hired or retained by the bank, or any subsidiary, or was paid by the bank." (*Id.*).

And Pimenta avers that the only allegations to connect Cohen "to the class of persons falling within Section 215" is that: Cohen controlled S.B.'s trust account; Cohen closed the mortgage loans for the subject properties; and Cohen therefore acted as a JPMorgan Chase agent in the transactions. (*Id.* (citing Indictment ¶ 10)). But Pimenta asserts that the Government's factual allegations in the Indictment fall beyond the scope of Section 215(a)(1) such that the Indictment fails to state an offense. (*Id.* at 2-4).

In opposition, the Government argues that the Indictment properly alleges each element of a violation under 18 U.S.C. § 215. (D.E. No. 98 ("Gov't Opp. Br.") at 5-6). In relevant part, the Government maintains that the Indictment alleges that the funds for the mortgage loans "were sent by JP Morgan [sic] Chase to S.B.'s attorney trust account" and "Linda Cohen controlled S.B.'s attorney trust account, acted as the settlement agent for the loans at issue in the Indictment, handled the closings for those loans and 'so acted as the agent of JPMorgan Chase in the transactions.'" (*Id.* at 6 (citing Indictment ¶ 10)). The Government insists that the Indictment "repeatedly alleges that Linda Cohen was an agent of JPMorgan Chase." (*Id.* at 6 (citing Indictment ¶¶ 10, 11 & Count 5, ¶ 2)). And the Government argues that—in his motion—Pimenta improperly imports facts outside of the Indictment and that this alone should be reason to deny Pimenta's motion. (*Id.* at 7).

### B. Analysis

#### i. The scope of "agent" in Section 215(a)(1)

As noted, the bank bribery statute punishes whoever "corruptly gives, offers, or promises anything of value to any person, with intent to influence or reward an officer, director, employee, agent, or attorney of a financial institution in connection with any business or transaction of such institution." 18 U.S.C. § 215(a)(1). "[T]he essence of the offense under section 215 is endeavoring to procure a loan from a bank for a thing of value by an officer of the bank." *United States v. Schoenhut*, 576 F.2d 1010, 1022 (3d Cir. 1978); *see also United States v. Jumper*, 838 F.2d 755, 758 (5th Cir. 1988) ("The purpose of 18 U.S.C. § 215 is to protect FDIC insured bank deposits by preventing unsound and improvident lines of credit from being made from such deposits by officers and directors of the bank. In addition, there can be no doubt that Congress' intent by enacting section 215 was to remove from the path of bank officials the temptation of self enrichment at the expense of the borrower *or bank*." (alteration in the original) (citations omitted)).

The Government charges Pimenta under Section 215 for a certain transaction involving "co-conspirator Linda Cohen, an *agent* of JPMorgan Chase in connection with a business and transaction of JPMorgan Chase." (Indictment Count 5, ¶ 2 (emphasis added)). The "agent" element is the only element of concern in resolving Pimenta's motion to dismiss Count Five of the Indictment.

But Section 215 does not define the term "agent." And, because no court in the Third Circuit has construed this term in connection with Section 215, the parties provide the Court with diverging views of the scope of this term. In particular, Pimenta posits that the "phrase 'agent' as used in Section 215(a) can only be taken to mean another species of bank employee or

contractor, and cannot under the doctrine of *noscitur a sociis* be distorted to mean any agent of any person who has any business to conduct with a bank, as the Indictment requires the term to be understood." (Pimenta Mov. Br. at 15 (alterations in the original); *see also id.* at 17 (arguing that "not everyone who handles or receives bank funds, or has a direct contractual relationship with a bank, can be reached even under the broader terms of [18 U.S.C. § 656]"—a different bank fraud statute that arguably uses the broader language "or connected in any capacity with" certain banks)).

The Government, however, argues that—since Congress failed to define "agent"—this term should be interpreted using its common-law definition and, further, that the "few courts" analyzing "agent" in the Section 215(a) context resort to the Restatement "for guidance." (Gov't Opp. Br. at 9). In relevant part, the Government proposes that "agency is the fiduciary relationship that arises when one person [a 'principal'] manifests consent to another person [an 'agent'] that the agent shall act on the principal's behalf and subject to the principal's control." (*Id.* at 10 (quoting Restatement (Third) of Agency § 1.01(2006))). So the Government avers that agency exists if "'the principal has the right to control the agent's performance.'" (*Id.* (quoting *United States v. Tianello*, 860 F. Supp. 1521, 1524 (M.D. Fla. 1994))). Moreover, the Government contends that "the determination of agency is a fact-specific inquiry" and, before "considering whether or not Linda Cohen was an agent of JPMorgan Chase, this Court should have before it a full trial record." (*Id.* at 11-12).

### ii.  Even accepting the Government's proposed scope of "agent," the factual allegations fall short

As the Government correctly notes, "agent has to mean something." (10/20/15 Tr. at 26:6). But the Court finds that—even accepting the Government's proposal—the alleged facts are not enough to make out that Cohen was a JPMorgan Chase agent.

The parties agree that the following three alleged facts—from the four corners of the Indictment—relate to the agency issue: (1) JPMorgan Chase "caused electronic wire transfers of funds to be sent to S.B.'s attorney trust account," (Indictment ¶ 10); (2) S.B.'s attorney trust account "was controlled by co-conspirator Linda Cohen, (*id.*); and (3) Cohen, the settlement agent, "closed the mortgage loans for the Subject Properties," (*id.*). (*See* 10/20/15 Tr. at 24:13-19 & 35:1-36:6). And there appears to be no dispute that the Government's allegation that Cohen "acted as the agent of JPMorgan Chase in the transactions," (Indictment ¶ 10), is a legal conclusion. (*See* 10/20/15 Tr. at 24:20-25:2 & 37:23-25).

The Court disagrees with the Government that the three alleged facts are "enough to plead Linda Cohen as an agent of the bank." (*See* 10/20/15 Tr. at 24:13-20). The Government's own proposal for "agent" requires the Government to allege facts supporting that S.B. or Cohen was acting on behalf of JPMorgan Chase or that S.B. or Cohen was subject to the control of JPMorgan Chase. (*See* Gov't Opp. Br. at 9-10); *cf. United States v. Musgrave*, 444 F.2d 755, 760 (5th Cir. 1971) ("It is common knowledge and practice that acting as a closing agent in a loan transaction does not create an agency or employer-employee relationship between the closing agent and the lending institution.").[3]

But the Indictment has no factual allegation relating to JPMorgan Chase's control—or right to control—S.B. or Cohen's performance. Nor is there any allegation supporting that S.B. or Cohen was acting on behalf of JPMorgan Chase. Indeed, there is no factual allegation about the relationship or connection between JPMorgan Chase and either S.B. or Cohen. Rather, the Government asks the Court to *infer* that some relationship existed and, further, that the

---

[3] The parties seem to agree that, for purposes of resolving Pimenta's motion to dismiss, it is inapposite whether Cohen is alleged to be an agent for JPMorgan Chase—or a sub-agent through S.B. because she was a paralegal for S.B., (Indictment ¶ 1(e)).

relationship was one of a principal and an agent. (*See, e.g.*, 10/20/15 Tr. at 21:15-18 ("She is the one who has to tell the bank that everything was fine at the closing.")).

As Pimenta suggests, the Government's agency theory seems premised on Cohen's alleged control over the attorney trust account and the notion that Cohen could leverage that control. (*See* 10/20/15 Tr. at 39:12-15). After all, the Government argues that the reason Pimenta was bribing Cohen was "because she is the one who controls the purse strings with respect to this transaction because she is here on behalf of the bank." (*Id.* at 21:21-24; *see also* Gov't Opp. Br. at 2 ("Linda Cohen was the closing agent, and accordingly, the agent of JPMorgan Chase . . . .")).

But the problem with the Government's position is that it assumes—without support—that an individual who allegedly leverages control over an account is an individual who somehow acts on behalf of or subject to control of the lender who transferred funds into the account. Put differently, the Government fails to offer any authority suggesting that controlling an account into which a bank sends loan funds—and closing mortgage loans for the relevant properties—makes the individual who controls the account an agent of the bank under Section 215(a)(1). *Cf. Vitillo*, 490 F.3d at 321 ("Any ambiguity in the language of a criminal statute should be resolved in favor of the defendant.").

Further, the Court is not persuaded that, by granting Pimenta's motion now, the Government is improperly deprived of the chance to put forth evidence proving that Cohen was an agent of JPMorgan Chase because a full trial record is required before dismissing the Section 215 Count. Pimenta's motion challenges the facial sufficiency of the Government's allegations in the Indictment—and that is where the Government falls short. Indeed, under Federal Rule of

Criminal Procedure 12(b)(3)(B), this Court has a duty to review the Government's Indictment and confirm that a legally deficient charge does not go to the jury. *See Huet*, 665 F.3d at 595.[4]

## V.  Conclusion

In sum, the Court finds that the Government's bank bribery charge is legally deficient because, as explained above, the Government's factual allegations do not make Cohen an "agent . . . of a financial institution" and thus fall beyond the scope of 18 U.S.C. § 215(a)(1). Therefore, the Indictment fails to state an offense under 18 U.S.C. § 215(a)(1) and this charge must be dismissed. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[4] Given the Court's analysis and ruling on Pimenta's motion, the Court need not reach Pimenta's alternative argument that the bank bribery statute is "fatally ambiguous" and void for vagueness. (*See* Pimenta Mov. Br. at 26-34; Pimenta Reply Br. at 8-10).